JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Frederick Sullivan ("Sullivan") appeals his convictions and sentence for attempted promoting prostitution, possession of an unauthorized device, unauthorized use of a computer or telecommunication property, and possession of criminal tools. We affirm in part and reverse in part, and remand to merge the allied offenses.
 {¶ 2} In the spring of 2002, Sullivan was a regular customer of the Medic drug store located on Lakewood Heights Boulevard in Cleveland. In April 2002, he approached Shannon Hall ("Shannon"), an employee of Medic, and offered her a job. Shannon declined, but told him she would tell her sister-in-law, Wanda Hall ("Wanda"), about the job.
 {¶ 3} Wanda, apparently interested in the prospect of a full-time job, contacted Sullivan. Wanda met Sullivan at his apartment to discuss the job. Sullivan told her that he owned an electrical and engineering business. He explained that the job involved secretarial work and that she would be required to meet clients at hotels to complete paperwork and obtain contracts. Although he gave only vague descriptions of his actual business and the job description, he told Wanda that she would receive ten percent of any revenue obtained from the contracts. He also asked her if she would be willing to have sex with clients in order to guarantee her ten percent.
 {¶ 4} Sullivan then told Wanda that he "sleeps" with all of his female employees after hiring them and that he would give her a $5,000 bonus if she slept with him. Wanda feigned interest in the offer, told Sullivan she would return the next day, and left the apartment. Wanda then telephoned Shannon, who reported the incident to a detective in the Cuyahoga County Sheriff's Department, where Shannon also worked.
 {¶ 5} Detectives Richard Peters and David Tompkins investigated the incident. They interviewed Shannon and Wanda Hall and obtained a search warrant for Sullivan's apartment. When the detectives executed the search warrant, they seized several pieces of illegal telecommunications equipment, including a VM-4000 cable converter. Thomas O'Grady ("O'Grady"), Director of Security at Adelphia Communications, testified that a VM-4000 cable converter is known in the industry as a "pirate" converter because it allows people to obtain free cable without the consent of the cable company. O'Grady also testified that VM-4000 cable converters are sold on the black market. The detectives found this device connected to a television in Sullivan's apartment showing recently released movies. The VM-4000 converter was taken to Adelphia's lab, where it was tested and found to be receiving unauthorized Adelphia cable service.
 {¶ 6} Sullivan testified in his own defense and denied he was receiving Adelphia cable illegally. He admitted that he never returned the cable box when Adelphia disconnected his service almost a year prior to the search of his apartment, but claimed that he received cable service through another provider. He also admitted splicing into another tenant's cable because the tenant complained of problems with his cable service and Sullivan sought to determine the cause of any problem. He disconnected the splice to the apartment once he found no problems.
 {¶ 7} Sullivan admitted inviting Wanda Hall to his apartment to discuss a nonexistent job. He also admitted telling her that he liked to have sex with his employees. Sullivan testified that he fabricated the prospective job because he was lonely and wanted to have sex with someone.
 {¶ 8} After denying motions for acquittal, the court found Sullivan not guilty of promoting prostitution but guilty of the lesser included offense of attempted promoting prostitution, and also guilty of possession of an unauthorized device, unauthorized use of a computer or telecommunication property, and possession of criminal tools.
 {¶ 9} At sentencing, the court placed Sullivan on community controlled sanctions for five years. The court ordered that he comply with the rules and regulations of the probation department, under the supervision of the basic sex offenders division. Finally, the court ordered him to complete 100 hours of community work service, submit to random drug testing, and serve 90 days in the Cuyahoga County Jail as a condition of community control.
 {¶ 10} Sullivan appeals, raising seven assignments of error.
 Attempted Promoting Prostitution {¶ 11} In his first assignment of error, Sullivan argues that he was denied due process of law when he was convicted of attempted promoting prostitution because the conviction was not supported by sufficient evidence and was contrary to law. Sullivan was originally indicted on charges of promoting prostitution, but the court found him guilty of attempted promoting prostitution, a lesser included offense under R.C. 2907.22(A)(2) and (A)(4) and R.C. 2923.02(A).
 {¶ 12} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are not to assess whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} R.C. 2907.22 provides in pertinent part:
"(A) No person shall knowingly:
 * *
 (2) Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire;
 * *
 (4) For the purpose of violating or facilitating a violation of this section, induce or procure another to engage in sexual activity for hire."
 {¶ 14} R.C. 2923.02(A) provides, in pertinent part:
 "No person, purposely or knowingly, and when purpose and knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 15} In the instant case, Wanda testified that Sullivan offered her a job whereby she would share ten percent of the profits if she had sex with clients. Sullivan also attempted to induce her to engage in sexual activity with him in exchange for $5,000. Therefore, the record is replete with evidence to establish beyond a reasonable doubt that Sullivan attempted to induce or procure Wanda to engage in sexual activity for hire.
 {¶ 16} Accordingly, the first assignment of error is overruled.
 Nature of the Accusations {¶ 17} In his second assignment of error, Sullivan argues the trial court violated his right to due process because the indictment did not include the subsections of the statute under which he was charged. Sullivan claims that because the subdivision of the statute was not expressly stated in the indictment, he was not properly informed of the nature and cause of the allegations against him. Thus, he argues, the allegations did not comport with a defendant's constitutional right to know the nature and cause of the charges against him.
 {¶ 18} In evaluating the sufficiency of an indictment, the court must determine whether all the statutory elements necessary to constitute a crime are alleged in the criminal charge. State v. Oliver (1972),32 Ohio St.2d 109, citing Davis v. State (1876), 32 Ohio St. 24; Statev. Joseph (1926), 115 Ohio St. 127, 131. This condition is founded upon the constitutional right of the accused to be informed of the nature and cause of the accusation against him. United States v. Hess (1887),124 U.S. 483, 487. Consequently, the omission of any material element or ingredient of an offense, as defined by statute, is "* * * fatal to the validity of the indictment." Id., quoting State v. Cimpritz (1953),158 Ohio St. 490.
 {¶ 19} Furthermore, R.C. 2945.83(A) provides that no judgment of conviction may be reversed because of an imperfection in the charging instrument if the accused was fairly and reasonably informed of the nature of the charge. Moreover, in State v. Fisher (Aug. 6, 1992), Cuyahoga App. No. 60918, this court held that where an indictment omits the subsection of the Revised Code under which an offense is alleged, it is not invalid if the indictment contains the numerical designation of the statute charged and the indictment advises the defendant of the nature of the offense.
 {¶ 20} The indictment charging promoting prostitution in the instant case alleged that Sullivan:
"[U]nlawfully and knowingly for purpose of violating or facilitatingthe violation of Section 2907.22 of the Revised Code, did induce orprocure Wanda Hall to engage in sexual activity for hire."
 {¶ 21} Although the indictment did not specify the subdivision of the statute under which Sullivan was being charged, the language in the indictment mirrors the language set forth in R.C. 2907.22(A)(4). The indictment also identified the name of the victim and the date of the alleged crime. Therefore, the indictment reasonably informed Sullivan of the nature of the charges against him.
 {¶ 22} Accordingly, the second assignment of error is overruled.
 Possession of an Unauthorized Device {¶ 23} In his third assignment of error, Sullivan argues that there was insufficient evidence to support his conviction for possession of an unauthorized device. In making this argument, Sullivan refers to the cable box placed in his apartment when he originally ordered cable. Once his cable service was disconnected, he was obligated to return the box to Adelphia or pay the $190 fee for the box. Sullivan argues that, although he neither returned the box nor paid the fee, the fact that he retained the box is not sufficient evidence that he illegally possessed an authorized device.
 {¶ 24} However, Sullivan's possession of an unauthorized device stems from his possession of the VM-4000 "pirate" converter, not the cable box.
 {¶ 25} R.C. 2913.041 provides, in pertinent part:
"(A) No person shall knowingly possess any device, including anyinstrument, apparatus, computer chip, equipment, decoder, descrambler,converter, software, or other device specially adapted, modified, ormanufactured for gaining access to cable television service, withoutsecuring authorization from or paying the required compensation to theowner or operator of the system that provides the cable televisionservice.
 * * *
 (C) Whoever violates division (A) of this section is guilty ofpossession of an unauthorized device, a felony of the third degree.
 (D) A person commits a separate violation of this section with regardto each device that is sold, distributed, manufactured, or possessed inviolation of division (A) or (B) of this section."
 {¶ 26} In the instant case, O'Grady testified that it is illegal to possess a VM-4000 "pirate" converter because this device allows someone to receive cable service without the knowledge or consent of the cable company. Det. Peters testified that the VM-4000 converter was installed in Sullivan's residence and was connected to his television. Therefore, there was substantial evidence supporting Sullivan's conviction.
 {¶ 27} Accordingly, the third assignment of error is overruled.
 Unauthorized Use of Computer and Telecommunication Property {¶ 28} In his fourth assignment of error, Sullivan argues that his retention of the cable box after Adelphia disconnected his cable service does not constitute an unauthorized use of computer or telecommunication property because there was evidence that he had Adelphia's implied consent to retain the box when Adelphia never reclaimed it. Sullivan also argues there is no evidence that the cable box was operable. Thus, he contends there is insufficient evidence that his possession of the cable box constituted unauthorized use of computer or telecommunication property.
 {¶ 29} However, Sullivan's unauthorized use of computer and telecommunication property conviction arises from his illegal use of the VM-4000 "pirate" converter, not the Adelphia cable box. R.C. 2913.04(B), which prohibits the unauthorized use of computer or telecommunication property, states:
"(B) No person shall knowingly gain access to, attempt to gain accessto, or cause access to be gained to any computer, computer system,computer network, telecommunications device, telecommunications service,or information service without the consent of, or beyond the scope of theexpress or implied consent of, the owner of the computer, computersystem, computer network, telecommunications device, telecommunicationsservice, or information service or other person authorized to giveconsent by the owner."
 {¶ 30} The record clearly establishes that Sullivan possessed the VM-4000 "pirate" converter, which is an illegal device. There was also evidence that this device was connected to his television and received unauthorized telecommunications service from Adelphia. Therefore, there was sufficient evidence to support Sullivan's conviction for unauthorized use of computer or telecommunication property.
 {¶ 31} Accordingly, the fourth assignment of error is overruled.
 Possession of Criminal Tools {¶ 32} In his fifth assignment of error, Sullivan argues that the trial court erroneously found him guilty of the felony version of possession of criminal tools without making the findings necessary to elevate the offense to a felony.
 {¶ 33} R.C. 2923.24, provides, in pertinent part:
"(A) No person shall possess or have under the person's control anysubstance, device, instrument, or article, with purpose to use itcriminally.
 * * *
 (C) Whoever violates this section is guilty of possessing criminaltools. Except as otherwise provided in this division, possessingcriminal tools is a misdemeanor of the first degree. If the circumstancesindicate that the substance, device, instrument, or article involved inthe offense was intended for use in the commission of a felony,possessing criminal tools is a felony of the fifth degree."
 {¶ 34} R.C. 2945.75, provides, in pertinent part:
"(A) Whenever the presence of one or more additional elements makes anoffense one of more serious degree:
 * * *
 (2) A guilty verdict shall state either the degree of the offense ofwhich the offender is found guilty, or that such additional element orelements are present. Otherwise, a guilty verdict constitutes a findingof guilty of the least degree of the offense charged."
However, noncompliance with R.C. 2945.75(A)(2) does not constitute reversible error if the verdict incorporates the language of the indictment, the evidence is overwhelming that the additional element is present, and there has been no objection at trial. State v. Breaston
(1993), 83 Ohio App.3d 410, 413, citing State v. Woods (1982),8 Ohio App.3d 56.
 {¶ 35} Here, the trial court found that Sullivan possessed the VM-4000 "pirate" converter "to avail himself of the cable signal without paying for that signal."[1] Although the court did not expressly state the degree of the offense, it implicitly referred to count three of the indictment. Further, the evidence overwhelmingly demonstrates that the additional element, i.e, intent to use the criminal tools in the commission of a felony, was present. Moreover, Sullivan never objected to the court's verdict at trial. Therefore, we find that the court's failure to strictly comply with the mandates set forth in R.C.2945.75(A)(2) did not constitute reversible error.
 {¶ 36} Accordingly, the fifth assignment of error is overruled.
 Allied Offenses {¶ 37} In his sixth assignment of error, Sullivan argues that the trial court erroneously sentenced him for both possession of criminal tools and for possession of an unauthorized device. Sullivan argues these two offenses should have been merged.
 {¶ 38} R.C. 2941.25(A) states, "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." (Emphasis added.) Allied offenses of similar import do not merge until sentencing, since a conviction consists of verdict and sentence. See, State v.Osborne (1976), 49 Ohio St.2d 135, 144, vacated on other grounds (1978),438 U.S. 911; State v. McGuire (1997), 80 Ohio St.3d 390, 399; State v.Waddy (1992), 63 Ohio St.3d 424, 447.
 {¶ 39} The State concedes the court should have merged the offenses but argues that because the court imposed concurrent sentences, the court's failure to merge the offenses at sentencing constitutes harmless error. However, it is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently. State v. Crowley (2002), 151 Ohio App.3d 249, 255, citingState v. Jones, Franklin App. No. 98-AP-129, 1998 Ohio App. LEXIS 5024;State v. Lang (1995), 102 Ohio App.3d 243. Therefore, the court should have merged the convictions for the two offenses rather than imposed concurrent sentences.
 {¶ 40} Accordingly, the sixth assignment of error is sustained, requiring a remand for the limited purpose of merging the possession of criminal tools conviction with the possession of an unauthorized device conviction. Crowley, supra, at 255.
 Multiple Punishments {¶ 41} In his seventh assignment of error, Sullivan claims he was subjected to multiple punishments because the court imposed five years' community control sanctions in addition to a 90-day term of imprisonment. However, there is nothing in the record to indicate that the five years of community control sanctions was in addition to the 90-day prison term. Therefore, we find the 90-day jail sentence was included within the five-year period of community control sanctions.
 {¶ 42} Accordingly, the seventh assignment of error is overruled.
 {¶ 43} Judgment affirmed in part and reversed in part. Case remanded for the limited purpose of merging the allied offenses of possession of criminal tools and possession of an unauthorized device.
James J. Sweeney, P.J. and Anthony O. Calabrese, Jr., J. Concur
[1] In rendering the verdict at the conclusion of the bench trial, the court specifically referred to the VM-4000 "pirate" converter which was identified and marked as Exhibit 2. (See Tr. 63).