OPINION
{¶ 1} Appellant, Bryan D. Haines, appeals from a jury verdict of the Lake County Court of Common Pleas, convicting him of three counts of kidnapping, two counts of abduction, and two counts of domestic violence, and sentencing him to an aggregate prison term of fifteen years. For the reasons set forth below, the judgment of the trial court is affirmed in part, and appellant's conviction and sentence on Count 7 is vacated.
 {¶ 2} In 1997, appellant met the victim. The two began a romantic relationship and moved into a residence together. Later, the victim purchased a condominium where they both lived.
 {¶ 3} The couple allegedly had an abusive relationship. The victim initially pressed charges against appellant in January 2000. In October 2001, the victim filed another complaint with the police, alleging domestic violence. Appellant served eighteen days in jail. He was also ordered not to have contact with the victim. Despite this order, the couple reconciled and resumed living together in January 2002.
 {¶ 4} The victim also testified that, on March 31, 2002, she found a card that had been given to appellant by another woman. The victim confronted appellant, and they began arguing. Appellant locked the doors and picked up a piece of wooden baseboard trim. He struck the victim with the board two or three times. The victim tried unsuccessfully to leave. Then, she began cutting her wrist with the broken glass. She testified that she hoped she would bleed enough to have to go to the hospital. In response, appellant temporarily calmed down and helped her wrap the wound.
 {¶ 5} Then, appellant talked to the victim about the eighteen days he spent in jail. He told her that she would have to spend eighteen days in a crawlspace in the condominium. Out of fear, the victim entered the crawlspace, and appellant screwed the door shut.
 {¶ 6} Appellant released the victim from the crawlspace after thirty to forty-five minutes, and he asked her to pray with him. The two then left the condominium to give appellant's daughter an Easter present. Upon returning, appellant locked the doors and told the victim she was going to die. He hit her and kicked her. The next morning, the victim told her neighbors and members of appellant's family what had happened. That evening, appellant's father and brother met with the couple to attempt to resolve the situation. It was agreed that appellant would move out of the victim's residence, get counseling, and take his medication. However, appellant never did any of these things.
 {¶ 7} On April 17, 2002, after having engaged in sexual relations, appellant perpetrated a day-long episode of threats and physical abuse of varying degrees. The victim and appellant ultimately went to sleep. While in bed, appellant instructed her to keep her hand on him at all times, so he could know if she tried to leave. The victim did ask to use the bathroom on one occasion, which appellant permitted her to do. However, appellant warned her not to attempt to go downstairs.
 {¶ 8} The next morning, appellant prohibited the victim from going to work. She initially left two voicemail messages with her employer indicating that she was sick and would not be coming to work. During these messages, she testified that appellant raised his fist to her head and instructed her not to notify anyone.
 {¶ 9} In one of the messages, she referenced a file called "Red Eye Printing," which was a fictitious company file created by the victim. In response, her coworkers found an envelope labeled "Red Eye Printing." The envelope contained a two-page document with instructions to notify the police; details about the condominium and appellant; and how the victim wished her possessions to be distributed if she died. After reading the document, the coworkers became concerned and called the police. The victim left another voicemail message, this time pleading not to be fired. During that call, she claimed that appellant held a knife to her throat.
 {¶ 10} Officer Brenda McNeely and Sergeant Gerald Lynch of the Painesville Police Department responded to the condominium, and they knocked on the door for eighteen to twenty minutes. Finally, appellant answered the door and informed the officers that he and the victim were sick. The officers asked appellant to step outside, and the victim was found in the kitchen with bruises. Appellant was arrested.
 {¶ 11} Appellant was indicted on a total of seven counts. The first three counts of the indictment related to the activities on March 31, 2002. Count 1 of the indictment charged appellant with kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(3). Count 2 of the indictment charged appellant with abduction, a third degree felony, in violation of R.C. 2905.02(A)(2). Count 3 of the indictment charged appellant with domestic violence, a fifth degree felony, in violation of R.C. 2919.25(A).
 {¶ 12} Counts 4 through 7 of the indictment related to the events of April 17 to 18, 2002. Count 4 of the indictment charged appellant with kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(2). Count 5 of the indictment charged appellant with abduction, a third degree felony, in violation of R.C. 2905.02(A)(2). Count 6 of the indictment charged appellant with domestic violence, a fifth degree felony, in violation of R.C. 2919.25(A). Finally, Count 7 of the indictment charged appellant with kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(3).
 {¶ 13} Appellant pleaded not guilty to these charges, and a jury trial was conducted. At the close of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. However, it was agreed that the parties would wait to argue the merits of the motion until the defense called its witness. After the defense rested, appellant renewed his Crim.R. 29 motion, which the trial court denied.
 {¶ 14} The jury found appellant guilty on all seven charges contained within the indictment. The trial court confirmed these convictions on all seven charges.
 {¶ 15} At the sentencing hearing, the trial court merged Counts 1 and 2 for sentencing purposes and issued a prison term of seven years on Count 1. The trial court sentenced appellant to one year of imprisonment for his conviction on Count 3, to be served concurrently with the prison term for Count 1. The trial court merged Counts 4, 5, and 6 for sentencing purposes and imposed a prison term of eight years on Count 4. This term was ordered to be served consecutively to the prison terms to be served on Counts 1 and 3. Finally, the trial court sentenced appellant to seven years of imprisonment on Count 7, which was ordered to be served concurrently with the sentences imposed on Counts 1, 2, and 3. Appellant received an aggregate prison term of fifteen years.
 {¶ 16} In sentencing appellant, the trial court stated, on the record, that "in my estimation, the victim would be laying down six feet under if this were not brought to an abrupt halt now, because that's where this was going." The court later added the following findings, on the record at the hearing. "[The victim] had to wear a pager so that you could keep tabs on her. I consider that pager an electronic leash. You monitored anybody that she would be acquainted with and that she could not have any friends that you would not approve of; that you gave her time limits wherever she would go; that she had to call in her whereabouts; that you timed her; that you had constant tabs on her; and that you caged her not with an electronic cage, but with an actual cubbyhole space like an animal, with a board screwed down with eight screws, three feet high, for 45 minutes to an hour * * *. I find that you placed her in an extreme risk of death, because had there been a fire in the building, she would have been consumed before somebody could get her out of that crawl space. In fact, had you left, no one would have known she was even there. * * *"
 {¶ 17} After considering the record, oral statements, the victim impact statement, and the principles and purposes of sentencing, the court balanced the seriousness and recidivism factors and made the following findings on the record at the sentencing hearing. "In terms of making these offenses more serious, and this applies to all seven counts, the victim suffered serious physical and psychological harm; the offender's relationship with the victim facilitated the offense; and the offender was motivated by prejudice based upon gender. In addition to that, I find that there has been such a pattern of violence, a cycle of violence for such a long period of time, that that makes all of these offenses more serious. * * * I find no factors making the offenses less serious.
 {¶ 18} "In terms of recidivism, I find that the offense was committed while [appellant] was under Community Control Sanctions for a previous domestic violence conviction * * * but there are two prior domestic violence convictions with this same person. So there is a previous criminal history. * * * I find that there has been a rehabilitation failure after previous convictions; I find that there's been a failure to respond in the past to probation; I find that the offense is [sic] committed under circumstances likely to recur. I also believe that if you were in a relationship with somebody else after this, that these offenses are likely to recur. * * * I find no genuine remorse. * * *
 {¶ 19} "In terms of recidivism being unlikely, I find no factors."
 {¶ 20} Consequently, the court found that a prison sentence was consistent with the principles and purposes of sentencing and that appellant was not amenable to any community control sanctions. The court found that the shortest prison term will demean the seriousness of the offense and not adequately protect the public from future crime. The court further found that the harm caused by the multiple offenses was so great or unusual that no single term for any of the offenses committed as parts of a single course of conduct will adequately reflect the seriousness of the conduct.
 {¶ 21} As a result, the court found that, pursuant to R.C.2929.14(E)(4)(a) through 2929.14(E)(4)(c), consecutive sentences were appropriate and necessary to protect the public and punish the offender. The court also stated, on the record, that consecutive sentences were not disproportionate to the seriousness of the conduct and the danger appellant posed. The court also found that the crimes were committed while appellant was under a community control sanction and that appellant's criminal history demonstrated that consecutive sentences are necessary to protect the public from future crime.
 {¶ 22} From that judgment, appellant appeals and sets forth the following six assignments of error:
 {¶ 23} "[1.] The trial court erred in overruling appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure as the state failed to sufficiently prove each element of the charged offenses of kidnapping and abduction beyond a reasonable doubt thus denying appellant Bryan Haines his constitutional right to due process.
 {¶ 24} "[2.] Appellant's conviction on counts one(1), two(2), four(4), five(5), and seven(7) was against the manifest weight of the evidence.
 {¶ 25} "[3.] Because the charges of kidnapping in counts 4 and count 7 resulted from an act that constitutes a single course of conduct, the indictment was multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.
 {¶ 26} "[4.] The trial court committed clear and prejudicial error by permitting the state, in its case in chief, to elicit expert testimony describing Battered Woman's Syndrome. Such evidence was irrelevant, prejudicial, inflammatory, and prohibited by the Ohio Legislature, the Supreme Court of Ohio and this honorable appeals court.
 {¶ 27} "[5.] The trial court's consideration of improper factors while sentencing the appellant undermined the fundamental fairness of the sentencing proceeding and violated the appellant[']s due process rights under the Fourteenth Amendment to the United States Constitution, thereby making the appellant's sentence contrary to law.
 {¶ 28} "[6.] In accordance with [R.C.] 2953.08, the trial court erred by imposing consecutive sentences in an aggregate amount which exceeds the maximum prison term allowed by [R.C.] 2929.14(A) for the most serious offense of which the appellant was convicted."
 {¶ 29} For the sake of clarity, we will discuss appellant's assignments of error out of sequence. In appellant's third assignment of error, he contends that Counts 4 and 7, the kidnapping counts relating to his conduct from April 17 to 18, 2002, allege the same conduct. Accordingly, appellant argues he should not have been convicted of both counts. We agree.
 {¶ 30} Although appellant failed to raise the issue of allied offenses at the trial court level, we will still consider appellant's current argument on its merits, to wit: that the trial court violated R.C. 2941.25, Ohio's statute addressing allied offenses of similar import. "An error that is waived by failure to object will not be noticed by the [reviewing court] unless it is plain error." (Emphasis added.) State v. Fields
(1994), 97 Ohio App.3d 337, 344, citing Crim.R. 52(B). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 31} Had he been convicted of only six total offenses, instead of seven, appellant may have been sentenced to shorter individual prison terms and/or a shorter aggregate prison term. The number of convictions may also play a role in future parole board determinations. As such, "[i]t is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently." State v.Sullivan, 8th Dist. No. 82816, 2003-Ohio-5930, at ¶ 40. See, also, Statev. Crowley, 151 Ohio App.3d 249, 2002-Ohio-7366, citing State v.Jones, 10th Dist. No. 98-AP-129, 1998 Ohio App. LEXIS 5024. Any error on behalf of a trial court in failing to merge convictions on allied offenses always amounts to plain error. See, also, State v. Ventresca
(Mar. 26, 1993), 11th Dist. No. 92-L-091, 1993 Ohio App. LEXIS 1754, at 4-5; Sullivan at ¶ 40.
 {¶ 32} R.C. 2941.25 provides:
 {¶ 33} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may only be convicted of only one.
 {¶ 34} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 35} "Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." (Emphasis sic.) Newark v.Vazirani (1990), 48 Ohio St.3d 81, syllabus.
 {¶ 36} Appellant asserts that the elements of Counts 4 and 7 are identical because both allege he violated R.C. 2905.01(A)(3). However, Count 4 actually charged appellant with violating R.C. 2905.01(A)(2).
 {¶ 37} A review of the kidnapping statute is helpful. R.C. 2905.01
provides, in part:
 {¶ 38} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 39} "(1) To hold for ransom, or as a shield or hostage;
 {¶ 40} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 41} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 42} "(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will;
 {¶ 43} "(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority."
 {¶ 44} R.C. 2905.01(B) provides additional elements that can warrant a kidnapping charge when physical harm is involved. The kidnapping statute clearly prohibits the restraint of a person for any number of purposes.
 {¶ 45} The Supreme Court of Ohio has noted that "`[a]nimus' has been defined as `* * * purpose, intent, or motive.'" Newark at 84, quotingState v. Blankenship (1988), 38 Ohio St.3d 116, 119, (Whiteside, J., concurring). Appellant was charged and convicted on Counts 4 and 7, of violating two separate subsections of the kidnapping statute, i.e., R.C.2905.01(A)(2) and 2905.01(A)(3). These separate subsections contain different elements as to the purpose for removing or restraining the liberty of the victim. R.C. 2905.01(A)(2) prohibits removing or restraining the liberty of a victim with the purpose to facilitate the commission of a felony. R.C. 2905.01(A)(3) prohibits doing so with the purpose of terrorizing or inflicting serious physical harm on the victim.
 {¶ 46} "Restraint of liberty has been construed to mean `to limit one's freedom of movement in any fashion for any period of time.'" Statev. Martin, 10th Dist. Nos. 02AP-33 and 02AP-34, 2002-Ohio-4769, at ¶ 32, quoting State v. Wingfield (Mar. 7, 1996), 8th Dist. No. 69229, 1996 Ohio App. LEXIS 867. Thus, in order for a kidnapping to conclude, there must be a "moment of freedom," where the victim's liberty is no longer restrained. Without a "moment of freedom," there exists a single, continuous restraint of the victim's liberty.
 {¶ 47} During the events of April 17 and 18, 2002, there was only one "restraint" of the victim's liberty. The testimony of the victim indicated that, through the actual use of physical force as well as threats, appellant continuously restrained her liberty from the initial encounter in the bedroom on the evening of April 17 until the police arrived the next morning. For example, he forced her to place her hand on his chest as they slept. She was ordered to ask permission to use the bathroom in the middle of the night. When she was in the bathroom, appellant instructed her not to go downstairs.
 {¶ 48} Based on these facts, there was no moment of release and only one act of restraint. The jury found appellant guilty on both Counts 4 and 7, finding that appellant had two separate motives during this single restraint. However, for the purposes of this assignment of error, the identity of appellant's motives is not determinative. Because there was only one restraint, there was only one kidnapping.
 {¶ 49} The trial court committed plain error by entering convictions on both Counts 4 and 7. R.C. 2941.25; Ventresca at 4-5; Sullivan at ¶ 40. Appellant's third assignment of error is with merit.
 {¶ 50} In appellant's fourth assignment of error, he argues that the trial court erred by permitting the state, in its case-in-chief, to elicit expert testimony describing battered woman syndrome. This assignment is without merit.
 {¶ 51} In the instant matter, as part of the state's case-in-chief, the victim testified to the alleged crimes committed by appellant. Upon cross-examination, the victim's credibility was challenged. Defense counsel elicited testimony about the victim's educational background and financial situation, to attempt to establish her independence and ability to leave her abuser, if the abuse truly existed or was that severe. Next, the state called Dr. James Eisenberg ("Dr. Eisenberg") as an expert witness. Dr. Eisenberg's testimony described battered woman syndrome generally. He opined that the features of this case parallel a battered woman syndrome scenario. This testimony regarding battered woman syndrome was properly admitted to explain the victim's state of mind, i.e., why she continued to return to appellant. This was quite relevant, as it went to her credibility, which had been challenged.
 {¶ 52} Prior to 1990, evidence of battered woman syndrome was inadmissible in support of self-defense. State v. Thomas (1981),66 Ohio St.2d 518. Then, the Supreme Court of Ohio overturned Thomas inState v. Koss (1990), 49 Ohio St.3d 213. In Koss, the defendant was indicted for murder. Id. The Court held that expert testimony concerning battered woman syndrome could be admitted to support the defendant's affirmative defense of self-defense. Id. According to the Court, "[w]here the evidence establishes that a woman is a battered woman, and when an expert is qualified to testify about the battered woman syndrome, expert testimony concerning the syndrome may be admitted to assist the trier of fact in determining whether the defendant acted in self-defense." Id. at 218.
 {¶ 53} The Koss court concluded, "admission of expert testimony regarding the battered woman syndrome does not establish a new defense or justification. Rather, it is to assist the trier of fact determine [sic] whether the defendant [killed] out of an honest belief that she was in imminent danger or death or great bodily harm and that such force was her only means of escape." Id. at 217.
 {¶ 54} Subsequent to the holding in Koss, the General Assembly enacted R.C. 2901.06. It essentially codified Koss.
 {¶ 55} "If a person is charged with an offense involving the use of force against another and the person, as a defense to the offense charged, raises the affirmative defense of self-defense, the person may introduce expert testimony of the `battered woman syndrome' and expert testimony that the person suffered from that syndrome as evidence to establish the requisite belief of an imminent danger of death or great bodily harm that is necessary, as an element of the affirmative defense, to justify the person's use of the force in question." R.C. 2901.06(B).
 {¶ 56} Koss has spurred a line of cases which has inexplicably limited and misconstrued both Koss's holding and its codification in R.C. 2901.06. Indeed, even this court has made such errors. See, e.g., State v.Lundgren (Apr. 22, 1994), 11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722. In Lundgren, we reached the correct conclusion, albeit for the wrong reason.[1] This is an appropriate time to correct these errors, including some overstatements made by this court in Lundgren.
 {¶ 57} In Lundgren, this court correctly concluded that testimony regarding battered woman syndrome was not admissible to support an affirmative defense of duress when Mrs. Lundgren was indicted for, inter alia, five counts of complicity in the commission of aggravated murder and five counts of conspiracy to commit aggravated murder. However, in reaching that correct conclusion, this court misstated, and overly limited, the meaning of R.C. 2901.06.
 {¶ 58} In Lundgren, we reviewed the Fifth Appellate District's interpretation of R.C. 2901.06. We noted that "the Fifth Appellate District has held that testimony as to the battered woman syndrome canonly be admitted when the affirmation defense of self-defense has been raised; i.e., the statute precludes such testimony for any otherpurpose." (Emphasis added.) Lundgren at 51, citing State v. Pargeon
(1991), 64 Ohio App.3d 679.
 {¶ 59} Following this logic, we stated in Lundgren that "the limitation set forth in [R.C. 2901.06] is controlling. The General Assembly has indicated that at this point, testimony concerning the syndrome is only admissible when self-defense has been raised." (Emphasis added.) Id. at 51.
 {¶ 60} The conclusion that R.C. 2901.06 expressly limits evidence of battered woman syndrome to cases where self-defense has been raised is clearly an overstatement. No such limiting language is contained within the text of R.C. 2901.06. Further, it is apparent that R.C. 2901.06 does not, in fact, preclude such testimony for all other purposes.
 {¶ 61} On that point, a companion statute, R.C. 2945.392, was enacted on the same day as R.C. 2901.06. It expressly permits testimony of battered woman syndrome "as evidence to establish the requisite impairment of the defendant's reason, at the time of the commission of the offense, that is necessary for a finding that the defendant is not guilty by reason of insanity." Id.
 {¶ 62} A more consistent interpretation of Koss, R.C. 2901.06, andLundgren would be that when evidence of battered woman syndrome is offered as a defense in a criminal matter, it is only admissible if either self-defense or insanity has been raised as a defense. If it is offered to support a legal theory other than criminal defense, it is not excluded per se.
 {¶ 63} Read in context, the conclusions reached in Koss and Lundgren
are implicitly limited to criminal cases where the evidence has been offered to support a defense theory other than self-defense. In Koss, the defendant raised self-defense as an affirmative defense to her murder of her tormentor, while the defendant in Lundgren raised a claim of duress, created by her husband, as an affirmative defense to the murder of five other victims. Essentially, Mrs. Lundgren argued she participated because she was afraid of her husband. These cases did not address the issue of whether evidence of battered woman syndrome can be used to support a theory other than one of criminal defense.
 {¶ 64} In Lundgren, a better rationale would have been that Ohio appellate courts have historically held that duress is not a valid defense to murder. Lundgren at 45. See, also, State v. Getsy (1998),84 Ohio St.3d 180; State v. Metcalf (1977), 60 Ohio App.2d 212, 215;State v. Stonestreet (Feb. 17, 1993), 9th Dist. No. 15721, 1993 Ohio App. LEXIS 836; State v. Wickline (Dec. 20, 1988), 10th Dist. No. 87AP-46, 1988 Ohio App. LEXIS 5324. Hence, if the defense of duress was not valid per se, then evidence of duress, i.e., expert testimony of battered woman syndrome, was not relevant.
 {¶ 65} This court's statement in Lundgren that evidence of battered woman syndrome is only admissible "when self-defense has been raised" has been approved by other appellate districts. See, e.g., Pargeon; State v.Sonko (May 22, 1996), 9th Dist. No. 95CA006181, 1996 Ohio App. LEXIS 2010; State v. Dowd (Jan. 19, 1994), 9th Dist. No. 93CA005638, 1994 Ohio App. LEXIS 132. Just as in the Emperor's New Clothes, the misstatement inLundgren began to assume a life of its own. This is an appropriate time to correct this statement of law.
 {¶ 66} A more accurate conclusion is that, in the context of a defensetheory, battered woman syndrome is only admissible for defense purposes when the defendant claims self-defense or insanity. It is only precluded when it is used to support other defense theories. Following this logic,Koss and Lundgren only limit the admissibility of such evidence when it is used for criminal defense purposes, with the exception of theories of self-defense and not guilty by reason of insanity pursuant to R.C.2945.392.
 {¶ 67} The dissent turns our attention to Sonko and Pargeon to support its contention that other appellate districts have concluded that evidence of battered woman syndrome is not admissible to explain a victim's behavior. Indeed, in Sonko, the Ninth Appellate District explicitly held that "[t]estimony about the battered woman syndrome is not admissible in [instances other than self-defense], such as to show why a victim returned to the defendant who assaulted her * * *." Id. at 9.
 {¶ 68} In Pargeon, the Fifth Appellate District provided a more detailed rationale for the same conclusion. The opinion does not state whether the victim testified, and whether she testified to past confrontations with the defendant. However, the state attempted, unsuccessfully, to admit evidence, in its case-in-chief, of battered woman syndrome to explain why the victim returned to the defendant despite his aggressions toward her. Id. It is also unclear from Pargeon
whether the proffered evidence included testimony generically alleging that the defendant was a battered woman, or whether the testimony also attempted to shed light on specific instances of conduct which led the victim to develop that state of mind.
 {¶ 69} The appellate court in Pargeon stated that the most compelling reason that the evidence was not admissible was that such evidence could only be used to establish the affirmative defense of self-defense when a woman has been charged with an offense involving the use of force against her husband. Id. at 681, citing Koss at paragraph three of the syllabus.
 {¶ 70} With all due respect, we disagree with the logic of both Sonko
and Pargeon. As discussed earlier, R.C. 2901.06 and Koss do not stand for the propositions set forth in Sonko and Pargeon. Further, the premise of the Court's holding in Koss was that "`[e]xpert testimony on the battered woman syndrome would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time.
The expert evidence would counter any `common sense' conclusions by the jury that if the beatings were really that bad the woman would have lefther husband much earlier. Popular misconceptions about battered women would be put to rest * * *.' See Walker, The Battered Woman, 19-31 (1979)." (Emphasis added.) Koss at 216, citing State v. Hodges (1986),239 Kan. 63, 68-69.
 {¶ 71} That is precisely the situation presently before us, except it is the abuser who is the defendant, not the victim. It is a natural andcompelling extension of this logic to conclude that the very foundationof the Court's holding in Koss is that testimony about battered womansyndrome is admissible to demonstrate a specific state of mind, if it isrelevant. In Koss, the evidence was relevant to demonstrate the defendant's reasonable belief that she was in danger of imminent death of severe bodily harm. In the instant matter, it was offered to show why the victim returned to her abuser. Thus, this evidence directly impacted her credibility, which had been challenged on this point.
 {¶ 72} As to Evid.R. 403(A), it does not, per se, automatically exclude such evidence. Although the court in Pargeon did admit that Evid.R. 403 was not the most compelling reason as to why the court decided that such evidence was not admissible, the court did conclude that the probative value of such testimony was substantially outweighed by the danger of unfair prejudice. Id. at 681.
 {¶ 73} "`Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" Pargeon at 681, quoting Evid.R. 404(B).
 {¶ 74} In the instant matter, the expert testimony about battered woman syndrome did not involve any statements about prior bad acts of appellant. The expert merely described the syndrome and stated that, after reviewing the records in the case, he concluded that the facts of this matter were consistent with battered woman syndrome.
 {¶ 75} The expert testimony went directly to the victim's state of mind and her reason for returning to her abuser. However, to the extent that prior bad acts of appellant can be inferred, such evidence was merely cumulative. Without objection, the victim testified on direct and cross-examination to many physical altercations with appellant, various instances of appellant's extremely controlling nature, and his 2001 conviction for domestic violence, of which she was the victim. As such, the Evid.R. 403 concern elicited in Pargeon was not at issue in the instant matter.
 {¶ 76} In this matter, the evidence was admissible pursuant to Evid.R. 404(A)(2). According to Evid.R. 404(A)(2), admissible evidence includes "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same
* * *." (Emphasis added.) The victim's credibility had been challenged. Upon cross-examination, defense counsel elicited testimony about the victim's educational background and financial situation, to attempt to establish her independence and ability to leave her abuser. The expert testimony was admissible, and directly relevant, to address the victim's credibility.
 {¶ 77} Here, the trial court properly admitted evidence of battered woman syndrome, via Dr. Eisenberg's testimony, to explain why a battered woman would turn to her abuser. The evidence was relevant because it rebutted the defense argument that the victim was lying, as evidenced by her numerous returns to appellant. Appellant's fourth assignment of error is without merit.
 {¶ 78} We now turn to appellant's first and second assignments of error, which we will address in a consolidated fashion for the sake of clarity. In appellant's first assignment of error, he argues that the trial court erred by overruling his motion for judgment of acquittal. Specifically, he contends that the state failed to sufficiently prove each element of the charged offenses of kidnapping and abduction beyond a reasonable doubt.[2] In his second assignment of error, he argues that his convictions on these same counts are against the manifest weight of the evidence. When addressing these assignments of error, we will consider the original charges against appellant and his original convictions, even though we have held that he was improperly convicted of both Counts 4 and Count 7. Ultimately, these assignments are without merit.
 {¶ 79} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 80} Likewise, when reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins 78 Ohio St.3d 380, 387.
 {¶ 81} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 82} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment of that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 83} Turning to the instant matter, appellant was charged and convicted of three counts of kidnapping, one count in violation of R.C.2905.01(A)(2), and two counts in violation of (A)(3), which provide, in pertinent part:
 {¶ 84} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 85} "* * *
 {¶ 86} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 87} "(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"
 {¶ 88} Appellant was also indicted on two counts of abduction, in violation of R.C. 2905.02(A)(2), which provides:
 {¶ 89} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 90} "* * *
 {¶ 91} "(2) By force or threat of force, restrain the liberty of another person, under circumstances which create a risk of harm to the victim, or place the other person in fear[.]"
 {¶ 92} Counts 1 and 2 of the indictment, relating to abduction and kidnapping, in violation of R.C. 2905.01(A)(3), pertain to the incident that occurred on March 31, 2002. The victim testified that appellant locked her in a crawlspace for thirty to forty-five minutes. This occurred after appellant had hit the victim several times with a board. When the victim was locked in the crawlspace, her liberty was restrained. Sufficient evidence was presented that the act was committed to terrorize the victim. The situation also created a risk of harm to the victim. Thus, when viewed in a light most favorable to the prosecution, the state presented sufficient evidence for the jury to find, beyond a reasonable doubt, that appellant committed kidnapping, in violation of R.C. 2905.01(A)(3), and abduction, in violation of R.C. 2905.02(A)(2).
 {¶ 93} Appellant also claims the state did not present sufficient evidence that he used force to compel the victim to enter the crawlspace. We disagree. He instructed the victim to enter the crawlspace shortly after beating her with a board. Moreover, the victim testified she entered the crawlspace because she was afraid of what appellant would do if she refused. Thus, the circumstantial evidence could lead to a reasonable inference by the jury that appellant's instructions to the victim were accompanied by force and compulsion.
 {¶ 94} Appellant also asserts that the state did not present sufficient evidence that the crawlspace incident was committed to terrorize the victim. Again, we disagree. The victim testified that appellant wanted her to know how he felt when he was locked up for eighteen days. Certainly, there is a reasonable inference to be drawn that appellant intended to terrorize the victim by sealing her in the crawlspace.
 {¶ 95} Based upon this analysis, we also conclude that the convictions on these counts were not against the manifest weight of the evidence.
 {¶ 96} Counts 4 and 5, relating to abduction and kidnapping, in violation of R.C. 2905.01(A)(2), pertain to the incident that occurred on April 17, 2002. The victim testified that appellant locked the bedroom door and closed the windows and blinds. Next, appellant beat her with a belt. Thereafter, he forced her to lie in bed with her hand on him all night so she could not leave. During this time, the victim's liberty was restrained. In addition, there was evidence presented that the act was committed to aid the commission of a felony, i.e., domestic violence.
 {¶ 97} Thus, sufficient evidence existed, when viewed in a light most favorable to the prosecution, for the jury to find, beyond a reasonable doubt, that appellant committed to offense of kidnapping, in violation of R.C. 2905.01(A)(2). Also, sufficient evidence was presented to reasonably infer that the act was committed to place the victim in fear. As such, sufficient evidence existed to enable the jury to find, beyond a reasonable doubt, that appellant committed abduction, in violation of R.C. 2905.01(A)(2). Based upon this analysis, we also conclude that the convictions on these counts were not against the manifest weight of the evidence.
 {¶ 98} The final sufficiency and manifest weight claims refer to Count 7 of the indictment, relating to kidnapping in violation of R.C.2905.01(A)(3), and pertain to the events on the morning of April 18, 2002. The victim testified that appellant held a knife to her throat while she made the third phone call to her workplace. Specifically, evidence was presented indicating that the victim's liberty was restrained and that the act was done to terrorize her. This evidence, when viewed in a light most favorable to the prosecution, was sufficient for the jury to find appellant guilty of kidnapping in violation of R.C.2905.01(A)(3), beyond a reasonable doubt.
 {¶ 99} Appellant next argues that the state did not present sufficient evidence that this event was done to terrorize the victim. He also contends the state did not introduce the knife at trial. The victim gave direct testimony that appellant held a knife to her throat. If believed, this is sufficient evidence upon which a reasonable person could find, beyond a reasonable doubt, that a knife was involved. In addition, holding a knife to an individual's throat reasonably implies an intent to terrorize a victim. Based upon this analysis, we also conclude that appellant's conviction on Count 7 was not against the manifest weight of the evidence.
 {¶ 100} To recapitulate, the trial court did not err by overruling appellant's motion for acquittal, and appellant's convictions on counts 1, 2, 4, 5, and 7 were not against the manifest weight of the evidence. Appellant's first and second assignments of error are without merit.
 {¶ 101} We now turn to appellant's fifth and sixth assignments of error, which relate to sentencing. Our review of a felony sentence is de novo. R.C. 2953.08. We will not disturb a defendant's sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v.Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334.
 {¶ 102} In appellant's fifth assignment of error, he argues that the trial court considered improper factors when sentencing him. Specifically, appellant challenges the trial court's findings that he was motivated by the victim's gender, that his conduct created an extreme risk of death to the victim, and that the victim suffered from battered woman syndrome. Ultimately, we find no merit in appellant's arguments.
 {¶ 103} When determining the sentence to impose, the trial court must consider the factors set forth in R.C. 2929.12, relating to the seriousness of the offense and the offender's likelihood of recidivism. R.C. 2929.12(A). Factors the court must consider that indicate an offender's conduct is more serious than conduct normally constituting the offense are:
 {¶ 104} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 105} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 106} "* * *
 {¶ 107} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 108} "* * *
 {¶ 109} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion. * * *" R.C. 2929.12(B).
 {¶ 110} The trial court must consider the following factors that indicate the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 111} "(1) The victim induced or facilitated the offense.
 {¶ 112} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 113} "(3) In committing the offense, the offender did not cause or suspect to cause physical harm to any person or property.
 {¶ 114} "(4) There are substantial grounds to mitigate the offender's conduct * * *." R.C. 2929.12(C).
 {¶ 115} The trial court must consider the following factors that indicate that the offender is likely to reoffend:
 {¶ 116} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2919.17, or 2929.18 of the Revised Code, or under post-release control * * * for an earlier offense or had been unfavorably terminated from post-release control for a prior offense * * *.
 {¶ 117} "* * *
 {¶ 118} "(5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D).
 {¶ 119} The court must consider the following as factors indicating that the offender is not likely to commit future crimes:
 {¶ 120} "* * *
 {¶ 121} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 {¶ 122} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 {¶ 123} "(4) The offense was committed under circumstances not likely to recur.
 {¶ 124} "(5) The offender shows genuine remorse for the offense." R.C. 2929.12(E).
 {¶ 125} Further, the trial court must consider any other relevant factors that indicate the offender's conduct is more or less serious or that the offender is likely or not likely to commit future crimes. R.C.2929.12(B) through 2929.12(E).
 {¶ 126} In the case sub judice, appellant specifically challenges the trial court's findings that he was motivated by the victim's gender, that his conduct created an extreme risk of death to the victim, and that the victim suffered from battered woman syndrome.
 {¶ 127} In appellant's fourth assignment of error, we held that evidence of battered woman syndrome, in the form of testimony by Dr. Eisenberg, was properly admitted. This testimony supports the trial court's finding that the victim was a battered woman. Based upon this, as well as appellant's history of domestic violence and his abusive relationship with the victim, it is perhaps axiomatic to conclude that appellant was motivated by the victim's gender.
 {¶ 128} The trial court's finding that appellant's conduct created an extreme risk of death to the victim is also supported by the record. The trial court rationalized this finding by stating, "had there been a fire in that building, she would have been consumed before somebody could get her out of that crawl space. In fact, had you left, no one would have known she was even there." We agree. Further, throughout the course of events, appellant struck the victim with a board, forced her to enter a crawlspace, hit and kicked her, prohibited her from leaving his side, and held a knife to her throat. There was also testimony that, at one time during the course of events, appellant specifically threatened the victim's life. As such, the trial court's finding that appellant's conduct created an extreme risk of death to the victim is fully supported by the record. Appellant's fifth assignment of error is without merit.
 {¶ 129} In appellant's sixth assignment of error, he argues that the trial court erred by imposing consecutive sentences. We disagree.
 {¶ 130} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentence or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 Ohio App. LEXIS 2573.
 {¶ 131} The court must also follow the requirements set forth in R.C.2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting that particular sentence. The Supreme Court of Ohio held that, when ordering a defendant to serve consecutive sentences, the trial court must make its statutorily required findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at paragraph one of the syllabus.
 {¶ 132} In this matter, the trial court made the requisite findings, on the record at the sentencing hearing, under R.C. 2929.14(E)(4). As mentioned, the trial court stated its belief that consecutive sentences are necessary to protect the public and adequately punish appellant and that consecutive sentences are not disproportionate to the seriousness of the conduct and the danger appellant posed. Further, the trial court found on the record all three of the factors listed in R.C.2929.14(E)(4)(a) through 2929.14(E)(4)(c). In support of these findings, the trial court cited to appellant's history of abusive behavior, the nature of the relationship, the nature of the crime, the risk the conduct posed to the victim, and appellant's lack of genuine remorse.
 {¶ 133} It is our position that the facts of this case sufficiently support the above findings. The trial court clearly followed the mandates outlined by R.C. 2929.14(E)(4), R.C. 2929.19(B), and Comer, when imposing consecutive sentences. Appellant's sixth assignment of error is without merit.
 {¶ 134} We now address whether appellant's sentence conformed to the requirements of Apprendi v. New Jersey (2000), 530 U.S. 466, 490. According to Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id.
 {¶ 135} The United States Supreme Court followed this rule in Blakelyv. Washington (2004), 124 S.Ct. 2531. The Blakely court held that the "statutory maximum" for Apprendi purposes is not the longest term a defendant can receive under the circumstances. Blakely at 2537. Instead, the "statutory maximum" is "the maximum sentence a judge may imposesolely on the basis of facts reflected in the jury verdict or admitted bythe defendant." (Emphasis sic.) Id. However, judicial findings based upon past criminal convictions which increase a penalty for a crime do not violate Apprendi or Blakely. Id.
 {¶ 136} We will first address appellant's individual sentences in this light. R.C. 2929.14(B) states:
 {¶ 137} "(B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 138} "(1) The offender was serving a prison term at the time of the offense, or the offender previously served a prison term.
 {¶ 139} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 140} To recapitulate, based upon the events that occurred in March 2002, appellant was convicted of one count of kidnapping, a first degree felony, carrying a prison term of three to ten years; one count of abduction, a third degree felony, carrying a prison term of one to five years; and one count of domestic violence, a fifth degree felony, carrying a prison term of six to twelve months. R.C. 2929.14. Appellant's convictions for kidnapping and abduction were merged, and a sentence of seven years of imprisonment was entered on the kidnapping count. A one-year prison sentence was entered on the domestic violence count, to be served concurrently with the kidnapping sentence.
 {¶ 141} For the events that occurred in April 2002, appellant was properly convicted of one count of kidnapping, one count of abduction, and one count of domestic violence.[3] The abduction and domestic violence counts were merged with the kidnapping count, on which appellant received a sentence of eight years of imprisonment. That sentence was to be served consecutively to the seven-year sentence imposed on the kidnapping count related to the events that occurred in March 2002.
 {¶ 142} At the sentencing hearing, the trial court found on the record, with respect to each of the counts, that the shortest prison term will demean the seriousness of the appellant's conduct and will not adequately protect the public from future crime by appellant or others. The court also stated on the record that appellant had two prior domestic violence convictions. That fact was uncontested. Thus, the trial court made the requisite findings to depart from the minimum sentence, in accord with Ohio's sentencing scheme. See R.C. 2929.14(B).
 {¶ 143} As stated, judicial findings based upon past criminal convictions which increase a penalty for a crime do not violate Apprendi
or Blakely. Further, in this matter, appellant was properly convicted of two counts of kidnapping, two counts of abduction, and two counts of domestic violence. It is perhaps axiomatic that the nature and number of the convictions in the instant matter may increase a penalty for a crime without violating Apprendi or Blakely. The facts relied upon in the instant convictions are at the low end of the scale as to the factual findings that Blakely was meant to challenge.
 {¶ 144} Following this logic, appellant's individual sentences could have been calculated, in conformity with Apprendi, without resolution to factual issues beyond the admitted facts. From appellant's history of criminal convictions, the charges of the indictment, and the nature and number of the convictions in this matter, the trial court could have found, as it did, that the shortest prison terms would demean the seriousness of the offenses and would not adequately protect the public. See, e.g., State v. Stambolia, 11th Dist. No. 2003-T-0053, 2004-Ohio-6945;State v. Parsons, 11th Dist. No. 2003-A-0030, 2004-Ohio-7237, at ¶ 32.
 {¶ 145} We now turn to appellant's consecutive sentences. In this matter, appellant's individual sentences did not exceed the statutory maximum. Accordingly, based upon the precedent established in this district, appellant's consecutive sentences do not violate Apprendi orBlakely. State v. Morales, 11th Dist. No. 2003-L-025, 2004-Ohio 7329, at ¶ 87, (When each individual sentence is less than the statutory maximum,Apprendi does not apply to consecutive sentences.).
 {¶ 146} To recapitulate, appellant's individual sentences could have been calculated without resolution to factual issues beyond the admitted facts. These sentences do not violate Apprendi or Blakely. Moreover,Apprendi does not apply to the consecutive sentences in this matter.
 {¶ 147} In conclusion, appellant's first, second, fourth, fifth, and sixth assignments of error are without merit, and his third assignment of error is well-taken. The judgment of the trial court is affirmed in part, appellant's conviction and sentence on Count 7 is vacated, and the matter is remanded for the limited purpose of merging Count 7 with Count 4 and for resentencing.[4]
Rice, J., concurs in judgment only, O'Neill, J., concurs in part and dissents in part with Concurring/Dissenting Opinion.
[1] This Lundgren case dealt with Alice Lundgren, the wife of cult leader Jeffrey Don Lundgren.
[2] Appellant does not challenge the sufficiency of the evidence presented relating to the domestic violence convictions, Counts 3 and 6.
[3] Based upon our analysis of appellant's third assignment of error, we will disregard the conviction on Count 7 for the purposes of this analysis.
[4] In our judgment entry, we sua sponte certify a conflict to the Supreme Court of Ohio, based upon a finding that our judgment on appellant's fourth assignment of error is in conflict with the judgment of the Fifth Appellate District in Pargeon. In that judgment entry, we order that the record shall first be transmitted to the Supreme Court of Ohio for review and final determination of that issue. We realize that, based upon the judgment of that Court, our conclusion in this opinion that the matter shall be remanded for the limited purpose of merging Count 7 with Count 4 and for resentencing, will become moot if the Court determines that appellant should receive a new trial. Nevertheless, shall that Court agree with our disposition of appellant's fourth assignment of error, or decline to accept jurisdiction, the record shall be transmitted to the trial court to merge Count 7 with Count 4 and for resentencing.