{¶ 1} Appellant, Gilberto Gonzalez, appeals his convictions and sentence in the common pleas court. Upon review of the record and for the reasons provided below, we affirm.
 {¶ 2} Appellant was indicted, along with co-defendant Maurice Ellington ("Ellington"), pursuant to a report of stolen property. The indictment charged him with one count of aggravated burglary, in violation of R.C. 2911.11, with a firearm specification. He was also charged with one count of theft, in violation of R.C. 2913.02, and one count of having a weapon while under disability, in violation of R.C.2923.13.
 {¶ 3} Richard Makovec ("Makovec"), the victim in this case, lived at the North Church Towers apartment building, located on Independence Road in Parma Heights, Ohio. In the beginning of 2004, Wall to Wall Construction Company was hired to renovate North Church Towers. Because of the planned renovations, residents of North Church Towers were notified that workers would be entering each apartment and that this might cause temporary inconveniences. In addition, since construction workers would be entering apartments at times when the residents might not be present, a security company was also hired to stay with construction workers while they were in individual units.
 {¶ 4} The criminal activity that resulted in the indictment occurred on January 9, 2004 when work was being done on Makovec's apartment. While he was inside Makovec's apartment, Jason Fetterman ("Fetterman"), one of the workers, noticed alarge collection of guns. Fetterman informed his supervisor of the guns, and the information was shared with fellow workers, including co-defendant Ellington, and appellant, who was the on-duty security officer. Appellant and Ellington devised a plan to steal the firearms and other items from Makovec's apartment, and executed their plan later that day.
 {¶ 5} When Makovec arrived home, he noticed several items missing from his apartment, including a laptop computer, six of his firearms, and a large amount of ammunition. He contacted the Parma Heights Police Department and reported the stolen items. Through the course of the police investigation, Fetterman came forward to give a full statement. He explained what appellant and Ellington had done that day — how they planned the theft and how they executed their plan. Fetterman stated he saw appellant walk out of Makovec's apartment with a box containing the stolen goods. He further indicated that he was paid to "turn a blind eye" to what he saw.
 {¶ 6} Meanwhile, two separate investigations were undertaken in Westlake and Lakewood. Although each of those investigations were initiated for unrelated reasons, the outcome of each led to the matching of firearms and ammunition in appellant's possession with those stolen from Makovec's apartment.
 {¶ 7} In the Westlake investigation, Kim Freiha ("Kim") contacted Officer Charles Escalante ("Escalante") with information she had received pertaining to suspected stolen guns. Kim obtained this information through her daughter, Naomie Freiha ("Naomie"), who was romantically involved with appellant. Kim obtained the serial number of a suspected stolen gun in appellant's possession and gave it to Escalante. Escalante investigated and discovered that the serial number matched the number of a gun reported stolen from Makovec's apartment.
 {¶ 8} In the Lakewood investigation, police officers were dispatched to Naomie's home on an unrelated matter where Naomie informed them of suspected stolen guns and ammunition in appellant's possession. Naomie's descriptions of those items also matched the guns and ammunition reported stolen from Makovec's apartment. Appellant was thereafter arrested and arraigned.
 {¶ 9} Prior to trial, the state amended the first count from aggravated burglary to burglary, in violation of R.C. 2911.12. Appellant waived his right to a jury and proceeded to a bench trial. At the conclusion of the state's case, appellant moved for an acquittal, which was denied except for the three-year firearm specification contained in count one. The trial court ultimately found appellant guilty of burglary (a third degree felony), theft (a third degree felony) and having a weapon while under disability (a fourth degree felony).
 {¶ 10} On December 5, 2005, appellant was sentenced to one year incarceration on each of his burglary and theft convictions and six months for the conviction for having a weapon under disability. According to the record, the trial court initially ran appellant's sentences for burglary and theft consecutively and his remaining six months concurrently, for a total of two years in prison; however, on February 6, 2006, the trial court issued a nunc pro tunc journal entry to correct the sentence. The nunc pro tunc entry stated that all three of the sentences should have been run concurrently, for an aggregate sentence of 1 year incarceration.
 {¶ 11} Appellant brings this appeal, asserting three assignments of error. Because assignments of error I and II are substantially interrelated, we address them together.
 {¶ 12} "I. The state failed to present sufficient evidence to sustain a conviction against Appellant.
 {¶ 13} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 14} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 15} Although an appellate court may determine that a judgment of a trial court is sustained by sufficient evidence, it may conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they find that the greater amount of credible evidence sustains the issue before them. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 16} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.State v. Issa, 93 Ohio St.3d 49, 67, 2001-Ohio-1290; see, also,State v. Thompkins, supra.
 {¶ 17} The proper test to be used when addressing the issue of manifest weight of the evidence can be found in State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526:
 {¶ 18} "Here, the test [for manifest weight] is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *." Moore at ¶ 8, quoting State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Tibbs v. Florida (1982), 457 U.S. 31.
 {¶ 19} The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction.Moore at ¶ 8, citing Martin.
 {¶ 20} We find nothing in the record to demonstrate that the evidence in this case is anything but legally sufficient to support the trial court's verdict. Furthermore, there is nothing in the record to suggest that the trial court clearly lost its way and created a miscarriage of justice that would require reversal of appellant's conviction. To the contrary, the evidence in the record demonstrates that the trial court acted properly. There was direct testimony from a witness that clearly incriminates appellant. In addition, there was evidence linking guns and ammunition found in appellant's possession with the guns and ammunition reported stolen from the victim. There was also clear evidence that appellant was in a position to have an opportunity to commit the crimes for which he was convicted.
 {¶ 21} Based on the evidence presented at the trial, we find no merit to appellant's first and second assignments of error. The state presented sufficient evidence to support appellant's convictions, and the convictions were not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.
 {¶ 22} "III. The trial court erred by ordering convictions and consecutive sentences for separate counts because the offenses are allied offenses pursuant to R.C. 2941.25."
 {¶ 23} In this assignment of error, appellant argues that his burglary and theft convictions are allied offenses of similar import, pursuant to R.C. 2941.25. He contends that the trial court erred in convicting and sentencing him on both of these offenses. This argument is without merit.
 {¶ 24} R.C. 2941.24 provides in pertinent part:
 {¶ 25} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 26} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 27} In determining whether certain offenses classify as allied offenses of similar import, this court has developed a two step analysis. See State v. Logan (1979), 60 Ohio St.2d 126, 297 N.E.2d 1345, and State v. Mitchell (1983), 6 Ohio St.3d 416, 6 Ohio B. 463,453 N.E.2d 593. "First, we must look to see if the elements of the two crimes correspond to such a degree that the commission of one offense will naturally result in the commission of the other. Mitchell, supra, at 418. If we find the two crimes to be allied offenses of similar import, then we must determine, under R.C. 2941.25(B), whether the offenses were committed separately or with a separate animus as to each." State v. Johnson, Cuyahoga App. Nos. 81692 81693, 2003-Ohio-3241.
 {¶ 28} Applying the above analysis, this court has held that the crimes of burglary and theft are not allied offenses. SeeJohnson, supra. "These two offenses do have some common elements in that * * * burglary may * * * involve the purpose to commit a theft offense. However, completion of the theft offense is not a necessary element because the purpose to commit any felony will suffice to supply the requisite intent. Therefore burglary and theft are not allied offenses. See, Mitchell, supra." Id. Appellant third assignment of error fails.
 {¶ 29} We further note that the trial court's February 6, 2006 nunc pro tunc journal entry is invalid. Appellant was not present before the court at the time that the entry was generated, nor was appellant provided proper notice of the sentence changes outlined in that entry. The trial court was without jurisdiction to issue such an order. Appellant's consecutive sentences are affirmed.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and
ANTHONY O. CALABRESE, JR., J., CONCUR