OPINION
{¶ 1} Appellant, Russell E. Appenzeller, appeals from the judgment entered by the Lake County Court of Common Pleas. The trial court sentenced Appenzeller to an aggregate prison term of 28 years for his convictions for burglary, theft, and attempted burglary.
 {¶ 2} In 2005, Julie Middlebrook worked at the Towne Motel, which is located between Mentor and Painesville, Ohio on Route 20. Middlebrook's duties included *Page 2 
working at the front desk and checking people into and out of motel rooms. In January or February 2005, an individual checked into a motel room under the name Russell Edwards. In court, Middlebrook identified this individual as Appenzeller. Middlebrook testified that on two or three occasions, Appenzeller approached her with a black garbage bag containing his belongings. He asked Middlebrook to hold the bag for a few hours. Then, Appenzeller would return later in the day and pay for an additional night at the motel. Finally, on the last occasion, Appenzeller paid for an entire week. Middlebrook testified that Appenzeller did not have a car and that he would take the Laketran bus when he left the motel.
 {¶ 3} On February 1, 2005, John Mackainch returned to his apartment at 7205 Mentor Avenue after working that day. Mackainch noticed that the door to his apartment had been pried open. Mackainch discovered that about $20 of loose change was missing from his dresser. In addition, he noticed he was missing a few video games and "a couple of packs of cigarettes."
 {¶ 4} On February 2, 2005, when Gayle Swaine returned to her apartment after work, she discovered that her apartment door was hard to open. Swaine lived with her boyfriend, Kevin Masterson, in an apartment at 7970 Mentor Avenue. Earlier that day, Masterson came home from work for lunch and noticed that the apartment was messy, but did not think anything was wrong at that time. When Swaine arrived home, she found her fireproof lock box opened on the bed of her spare bedroom. Swaine testified that four rings and two bracelets were missing from her bedroom. She testified that the value of the missing jewelry totaled $3,800. Patrolman John Stirewalt of the Mentor *Page 3 
Police Department investigated the break-in at Swaine's residence. He testified that a screwdriver was lying on the bed next to the lockbox.
 {¶ 5} Lauri Casselman also lived in an apartment located at 7970 Mentor Avenue. On February 2, 2005, she discovered that her apartment had been broken into. In her bedroom, she found her metal lockbox, which had been pried open. Casselman testified that she was missing $60 and her mother's wedding ring.
 {¶ 6} Shawn Hart lived in the same apartment building as Casselman, in an apartment unit upstairs from Casselman's. Hart returned to his apartment for lunch on February 2, 2005. As he was walking towards his apartment, he noticed a man leaving Casselman's apartment carrying a medium-sized box. The individual looked at Hart and asked him how he had been. Hart testified that the man walked toward Route 20 upon leaving Casselman's apartment. While Hart thought the situation was strange, he did not contact the police at that time. Later that day, Hart returned home from work and observed police officers outside Casselman's apartment. At that time, he informed the officers about his earlier observations. A few months later, the police presented Hart with a photo line-up. Hart identified the third individual in the photo line-up, Appenzeller, as the person he saw leaving Casselman's apartment. In addition, during his in-court testimony, Hart positively identified Appenzeller as the individual he witnessed carrying the box from Casselman's apartment.
 {¶ 7} On February 9, 2005, Wesley Schubert returned to his apartment at 7950 Mentor Avenue. He discovered that his door had been pried open. Once inside his apartment, Schubert noticed that approximately $40 in change and two credit cards were missing. *Page 4 
 {¶ 8} In February 2005, Timothy Bowers was the manager at a Giant Eagle grocery store in Mentor, Ohio. Bowers testified that the Giant Eagle has a Coinstar machine. This machine converts loose change into paper currency for a fee. After the coins are deposited into the machine, the machine prints a receipt that can be redeemed at the store's customer service window. On February 9, 2005, a Coinstar transaction occurred at 12:17 p.m. $61.31 in coins was exchanged for $55.90 in currency. The store's surveillance camera recorded an individual redeeming the receipt in question on February 9, 2005. This videotape was admitted as an exhibit at trial and was played for the jury. Sergeant Ken Gunsch of the Mentor Police Department testified that the individual in the videotape was Appenzeller.
 {¶ 9} On February 23, 2005, at approximately 1:00 p.m., the Mentor Police Department received a call from a woman who stated a man was breaking into apartments in the Terrace Apartment complex located on Center Street. Patrolman Mike Murton was dispatched to the scene. Patrolman Murton looked around the apartment complex, but was unable to locate the suspect. Patrolman Murton discovered that five apartments showed signs of being broken into.
 {¶ 10} Sheldon Hess lived at 7433 Center Street, Apartment 110, in Mentor, Ohio. On February 23, 2005, he received a call from the police indicating that his apartment had been broken into. Hess returned to his apartment and did not immediately notice anything missing. However, upon further inspection, Hess discovered that approximately $8 in coins and a credit card were missing.
 {¶ 11} Patricia Zeiger lived in Apartment 111 at 7344 Center Street in Mentor, Ohio. On February 23, 2005, someone met her in the parking lot when she arrived *Page 5 
home from work and told her that her apartment had been broken into. Zeiger discovered that she was missing $8 in quarters that she had set out to do laundry.
 {¶ 12} Lisa Wilson lived at 7433 Center Street, Apartment 104, in Mentor, Ohio. On February 23, 2005, Wilson received a call from a police officer informing her that someone had broken into her apartment. Nothing was missing from Wilson's apartment.
 {¶ 13} Lori Wolf lived in Apartment 108 at 7433 Center Street in Mentor, Ohio. On February 23, 2005, a police officer called Wolf and asked her to come to her apartment because there was a break-in. Wolf left work and returned to her apartment. Upon inspecting her apartment, Wolf discovered that nothing was missing.
 {¶ 14} James Wheeler was in the Lake County jail in April 2005. During that time, Appenzeller was also incarcerated in the Lake County jail. Wheeler testified that he had several conversations with Appenzeller. According to Wheeler, Appenzeller told him he was from the Youngstown area and that he was in Lake County to attend a treatment program at a facility called Teen Challenge. Wheeler testified that Appenzeller did not care for the program, so he left and went to a local McDonald's restaurant, where he panhandled for money. Then, Appenzeller purchased a screwdriver for the purpose of breaking into residences. Wheeler indicated that Appenzeller told him he had committed 30-40 burglaries along Mentor Avenue near the Great Lakes Mall. Appenzeller told Wheeler that he committed the burglaries during the day, when people were not home, and that he primarily stole change and money so he could remove the items without being noticed. Further, Wheeler testified that Appenzeller told him he stayed at the Towne Motel, that he paid for his room by *Page 6 
breaking into residences, and that he would leave his belongings with the person at the front desk of the Towne Motel. Appenzeller told Wheeler that he used Laketran as transportation to and from the burglaries. He told Wheeler that he placed the stolen items in a black bag.
 {¶ 15} Appenzeller was indicted on a total of 18 counts, including six counts of burglary, in violation of R.C. 2911.12(A)(2) and second-degree felonies; six counts of burglary in violation of R.C. 2911.12(A)(3) and third-degree felonies; two counts of theft, in violation of R.C. 2913.02(A)(1) and fifth-degree felonies; two counts of attempted burglary, in violation of R.C. 2923.02 and third-degree felonies; and two counts of attempted burglary in violation of R.C. 2923.02 and fourth-degree felonies. Counts one (second-degree burglary) and two (third-degree burglary) related to the incident at Mackainch's residence; counts three (second-degree burglary), four (third-degree burglary), and five (theft) related to the incident at Swaine's residence; counts six (second-degree burglary), seven (third-degree burglary), and eight (theft) related to the incident at Casselman's residence; counts nine (second-degree burglary) and ten (third-degree burglary) related to the incident at Schubert's residence; counts 11 (second-degree burglary) and 12 (third-degree burglary) related to the incident at Hess's residence; counts 13 (second-degree burglary) and 14 (third-degree burglary) related to the incident at Zeiger's residence; counts 15 (third-degree attempted burglary) and 16 (fourth-degree attempted burglary) related to the incident at Wilson's residence; counts 17 (third-degree attempted burglary) and 18 (fourth-degree attempted burglary) related to the incident at Wolf's residence.
 {¶ 16} Appenzeller pled not guilty to the charges against him. *Page 7 
 {¶ 17} On Monday, September 18, 2006, Appenzeller filed a motion for leave to file a motion for relief from prejudicial joinder, which was granted by the trial court. On Friday, September 22, 2006, Appenzeller filed a motion for relief from prejudicial joinder. Appenzeller's one-page motion asserted that the charges should be separated into four separate trials, with counts one and two, counts three through eight, counts nine and ten, and counts 11 through 18 tried together. This motion summarily cited to Crim. R. 14 and asserted that Appenzeller would be prejudiced by all the counts being tried together, but it did not contain any case law or other legal arguments in support. The state did not file a response to this motion. On Monday, September 25, 2006, the matter proceeded to a jury trial. The record reflects that the trial court overruled Appenzeller's motion to bifurcate that day. However, the transcript submitted to this court does not contain any discussion between counsel and the trial court regarding this motion.
 {¶ 18} At the close of the first day of trial, Appenzeller made an oral motion to represent himself. The trial court denied this motion as untimely. Following the state's case-in-chief, Appenzeller moved for acquittal pursuant to Crim. R. 29. The trial court denied this motion. The jury found Appenzeller guilty on all 18 counts.
 {¶ 19} After he was convicted, Appenzeller filed a motion for a new trial, which the trial court denied.
 {¶ 20} The trial court sentenced Appenzeller to a four-year prison term on count one and a three-year prison term on count two, to be served concurrently with each other. The trial court sentenced Appenzeller to a four-year prison term on count three, a three-year prison term on count four, and a one-year prison term on count five, to be *Page 8 
served concurrently with each other. The trial court sentenced Appenzeller to a four-year prison term on count six, a three-year prison term on count seven, and a one-year prison term on count eight, to be served concurrently with each other. The trial court sentenced Appenzeller to a four-year prison term on count nine and a three-year prison term on count ten, to be served concurrently with each other. The trial court sentenced Appenzeller to a four-year prison term on count 11 and a three-year prison term on count 12, to be served concurrently with each other. The trial court sentenced Appenzeller to a four-year prison term on count 13 and a three-year prison term on count 14, to be served concurrently with each other. The trial court sentenced Appenzeller to a two-year prison term on count 15 and a one-year prison term on count 16, to be served concurrently with each other. Finally, the court sentenced Appenzeller to a two-year prison term on count 17 and a one-year prison term on count 18, to be served concurrently with each other. The trial court ordered the sentences imposed for counts one and two; counts three, four, and five; counts six, seven, and eight; counts nine and ten; counts 11 and 12; counts 13 and 14; counts 15 and 16; and counts 17 and 18 to be served consecutively to each other. Thus, Appenzeller's aggregate prison term is 28 years.
 {¶ 21} After he was sentenced, Appenzeller filed a petition for postconviction relief, which the trial court denied. Appenzeller has separately appealed the trial court's denial of his petition for postconviction relief, and our decision in that matter is also decided today. State v. Appenzeller, 11th Dist. No. 2007-L-175.
 {¶ 22} Appenzeller raises five assignments of error and four supplemental assignments of error. Appenzeller's first assignment of error is: *Page 9 
 {¶ 23} "The appellant's conviction for counts 1 through 2 and counts 6 through 18 was not supported by sufficient evidence."
 {¶ 24} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 25} Appenzeller does not challenge the fact that the burglaries in this matter occurred. Instead, he challenges the state's evidence identifying him as the offender in these burglaries.
 {¶ 26} Appenzeller asserts that there is no direct evidence linking him to several of the burglaries. However, we note the state presented significant circumstantial evidence that Appenzeller committed the crimes in question. The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" State v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 27} Wheeler testified that Appenzeller made certain confessions while in the Lake County jail. While Appenzeller did not tell Wheeler the specific residences he burglarized, he told him significant details about the burglaries in question. First, Appenzeller told Wheeler that the burglaries were committed in the area of the Great *Page 10 
Lakes Mall. Sergeant Gunsch testified regarding the locations of the burglaries. He testified that the burglaries were all committed a short distance from Route 20, and some of the burglaries were committed in close proximity to the Great Lakes Mall.
 {¶ 28} Wheeler testified that Appenzeller told him he was staying at the Towne Motel during this time and that he would leave his personal belongings with an employee of the Towne Motel and take the Laketran bus to commit the burglaries. Middlebrook confirmed this, by testifying that Appenzeller stayed at the Towne Motel and would leave a garbage bag containing his personal belongings with her. She further testified that Appenzeller would get on the Laketran bus and would be gone for several hours. Then, he would return with money and pay for an additional night at the motel.
 {¶ 29} Wheeler testified that Appenzeller told him he committed the burglaries during the day, when it was unlikely that people would be home. In this matter, all of the burglaries were committed during daytime hours. Further, Wheeler indicated that Appenzeller told him he would only take change and money, so it would be easy to carry away. The various victims in this case testified that the items stolen were all physically small items, such as change, credit cards, and jewelry.
 {¶ 30} Wheeler testified that Appenzeller told him he used a screwdriver to commit the burglaries. The state corroborated this testimony by introducing evidence of tool marks for the various burglaries. The tool marks were consistent with a screwdriver being used to gain access to the residences. *Page 11 
 {¶ 31} Wheeler stated that Appenzeller told him he used a black bag to carry the screwdriver and stolen items. At trial, the parties stipulated that a black duffle bag introduced by the state was Appenzeller's.
 {¶ 32} At the time Wheeler disclosed Appenzeller's comments to the police, none of the details of the crimes had been made public. In fact, Sergeant Gunsch was able to get additional leads, such as information about the Towne Motel, that the police were not aware of prior to speaking to Wheeler.
 {¶ 33} In addition to Wheeler's testimony, the state introduced a videotape depicting Appenzeller exchanging coins at a Coinstar machine. This transaction occurred on the same day that Schubert's apartment was broken into and change was stolen from his residence. The fact that Appenzeller converted change to cash currency is circumstantial evidence that he committed a burglary where change was stolen on the same day and in close proximity to the Giant Eagle store.
 {¶ 34} Finally, Hart testified that he witnessed Appenzeller leave Casselman's apartment carrying a box on the day her apartment was burglarized.
 {¶ 35} This evidence, when taken together and viewed in a light most favorable to the state, is sufficient for a trier-of-fact to conclude that Appenzeller committed the charged offenses beyond a reasonable doubt.
 {¶ 36} Appenzeller's first assignment of error is without merit.
 {¶ 37} Appenzeller's second assignment of error is:
 {¶ 38} "The trial court erred, to the prejudice of the appellant, by permitting Shawn Hart to identify the appellant as the individual this witness had seen committing a burglary over the objection of the appellant's counsel." *Page 12 
 {¶ 39} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 40} Appenzeller claims the trial court erred by admitting the following testimony from Hart after he testified that he picked out the third individual in the photo line-up:
 {¶ 41} "Q. And where did you recognize Number 3 from?
 {¶ 42} "A. The day I went out, I walked in and saw someone coming out of the Lauri's [sic] apartment where she had been robbed.
 {¶ 43} "Q. Do you see that person sitting here in the courtroom that burglarized, that you saw burglarizing Lauri's apartment?
 {¶ 44} "[Defense counsel]: Objection.
 {¶ 45} "THE COURT: Overruled.
 {¶ 46} "A. Yes, I do."
 {¶ 47} The assistant prosecutor mischaracterized Hart's prior testimony, inferring that Hart had testified that he witnessed Appenzeller commit a burglary at Casselman's residence. Accordingly, the trial court should have sustained Appenzeller's objection to this mischaracterization. However, in light of our highly-deferential standard of review, we do not conclude that the trial court abused its discretion in making this ruling. *Page 13 
 {¶ 48} Moreover, Hart's prior testimony was clear that he only saw Appenzeller leave Casselman's apartment carrying a cardboard box. He specifically testified that while he thought the situation was strange, he did not initially consider Appenzeller's actions to be criminal. It was only after he discovered that Casselman was missing items from her apartment that he informed the police of his observation of Appenzeller. Thus, any perceived error in relation to the admission of this evidence is harmless. Crim. R. 52(A).
 {¶ 49} Appenzeller's second assignment of error is without merit.
 {¶ 50} Appenzeller's third assignment of error is:
 {¶ 51} "The trial court erred, to the prejudice of [the] appellant, by denying the appellant the right to represent himself, pro se."
 {¶ 52} "It is well settled that a defendant in a state criminal trial has a constitutional right of self representation, and may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so." State v. McKinney, 11th Dist. No. 2007-T-0004,2008-Ohio-3256, at ¶ 211, citing Faretta v. California (1975),422 U.S. 806. The Supreme Court of Ohio has held that "if a trial court denies the right of self-representation when properly invoked, the denial is per se reversible error." State v. Vrabel, 99 Ohio St.3d 184,2003-Ohio-3193, at ¶ 49, citing State v. Reed (1996), 74 Ohio St.3d 534,535, citing McKaskle v. Wiggins (1984), 465 U.S. 168, 177.
 {¶ 53} However, a defendant's request for self-representation must be made timely. State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 40. (Citations omitted.) In this matter, Appenzeller did not request to represent himself until the conclusion of the first day of trial. By that time, the vast majority of the witnesses had *Page 14 
testified. In State v. Cassano, the Supreme Court of Ohio held that a motion for self-representation made only three days prior to the start of trial was not timely. Id. In State v. Deir, this court held that a defendant's motion to represent himself was not timely when it was made only one business day before the start of trial. State v. Deir, 11th Dist. No. 2005-L-117, 2006-Ohio-6885, at ¶ 35. Finally, in State v.McKinney, this court held that the trial court did not err in denying a motion for self-representation that was made during the course of a jury trial. State v. McKinney, 2008-Ohio-3256, at ¶ 214. Since Appenzeller's request for self-representation was not made until after his jury trial had begun, it was untimely. Therefore, the trial court did not err by denying his oral motion for self-representation.
 {¶ 54} Appenzeller's third assignment of error is without merit.
 {¶ 55} Appenzeller's fourth assignment of error is:
 {¶ 56} "The appellant's conviction for counts 1 through 18 is against the manifest weight of the evidence."
 {¶ 57} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 58} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.) *Page 15 
 {¶ 59} Appenzeller argues that there were no fingerprints at the crime scenes linking him to the offenses. We note that a pair of gloves was found in Appenzeller's black duffle bag, which could explain the lack of fingerprints. Contrary to Appenzeller's contention, the gloves were not relevant to establish that he committed the offenses, but they were relevant to help explain the lack of fingerprint evidence.
 {¶ 60} Mitchell Wisniewski of the Lake County Forensic Laboratory testified that a screwdriver stipulated to be Appenzeller's could not be excluded as a possible tool that created certain tool marks on the door frame of one of the residences. Appenzeller argues that his screwdriver was new and did not have marks or paint transfer on it, so it could not have been used in the crimes. However, Wisniewski testified that paint transfer on a screwdriver can be easily removed and, depending on the exact surface pried into, the screwdriver may not sustain significant damage.
 {¶ 61} Appenzeller argues that the jewelry stolen from Casselman and Swaine was never linked to him. We do not believe this fact is determinative. The jewelry itself would have had limited value to Appenzeller. As such, he could have sold the jewelry prior to being apprehended.
 {¶ 62} Appenzeller questions the reliability of Hart, since Hart testified that he did not initially suspect Appenzeller of criminal activity.
 {¶ 63} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, *Page 16 
1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 64} Hart explained his initial reaction to the situation and how his suspicion grew when he learned that Casselman's apartment had, in fact, been burglarized. Thus, the jury was free to decide what weight to give his testimony.
 {¶ 65} Appenzeller contends the fact that Hart observed him with a box makes his testimony incredible, because the box was not described at any of the other burglaries. The fact that Appenzeller was carrying a box does not exonerate him. The bottom line is Hart testified that he witnessed Appenzeller leave Casselman's apartment on the day it was broken into. What Appenzeller was carrying at that time is of far less significance.
 {¶ 66} Appenzeller argues that Wheeler was not a credible witness. Wheeler admitted that he has an extensive criminal history. Further, while he did not actually receive any benefit from testifying against Appenzeller, he acknowledged that he asked to be transferred to a treatment facility more quickly. Both of these facts were before the jury, and the jury could evaluate Wheeler's testimony in light of these facts.
 {¶ 67} Appenzeller argues that Wheeler's testimony was incredible because he informed the police that Appenzeller told him that Appenzeller masturbated in the underwear of the women whose homes he broke into. While there was no corroborating evidence to support this allegation, the remainder of Wheeler's testimony was supported by other evidence. Sergeant Gunsch testified that none of the women reported this occurrence, and he did not follow up with them about this issue. The fact *Page 17 
that there was no corroborating evidence regarding this issue does not, per se, render the remainder of Wheeler's testimony incredible.
 {¶ 68} The jury did not lose its way or create a manifest miscarriage of justice by finding Appenzeller guilty of the charged offenses.
 {¶ 69} Appenzeller's fourth assignment of error is without merit.
 {¶ 70} Appenzeller's fifth assignment of error is:
 {¶ 71} "The trial court erred, to the prejudice of the appellant, by failing to grant the appellant's motion for relief from prejudicial joinder."
 {¶ 72} The trial court issued a judgment entry indicating that it denied Appenzeller's motion to sever the charges in court on the first day of trial. However, we again note the transcript submitted to this court does not reflect any discussions between counsel and the trial court on this subject or contain the trial court's oral ruling on the motion.
 {¶ 73} "Pursuant to App. R. 9, the appellant has a duty to file a transcript of all portions of proceedings necessary for the court to consider the appeal. When an appellant fails to provide a complete transcript, or those portions that support the claimed error, the reviewing court has no choice but to presume the regularity of the proceedings and affirm the judgment of the trial court." State v.Stislow, 11th Dist. No. 2005-L-207, 2006-Ohio-4168, at ¶ 24. (Citations omitted.)
 {¶ 74} In the case sub judice, the only matters in the record regarding Appenzeller's motion for relief from prejudicial joinder is the motion itself, which contains minimal legal argument in support of the motion. *Page 18 
 {¶ 75} Moreover, Appenzeller failed to renew his motion for relief from prejudicial joinder at his trial. "[T]he Ninth Appellate district held that `(a) motion for severance due to prejudicial misjoinder under rules of procedure for relief from prejudicial misjoinder must be renewed at the close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived.'" State v.Feathers, 11th Dist. No. 2005-P-0039, 2007-Ohio-3024, at ¶ 134, quotingState v. Owens (1975), 51 Ohio App.2d 132, paragraph two of the syllabus. "This court has continuously adhered to that rationale." Id., citing State v. Cannon (June 30, 1999), 11th Dist. No. 98-L-032, 1999 Ohio App. LEXIS 3057, at *11-12; State v. Brady (1988),48 Ohio App.3d 41, 44; State v. Daniels (Dec. 23, 1994), 11th Dist. No. 92-T-4730, 1994 Ohio App. LEXIS 5900, at *12-13.
 {¶ 76} Since Appenzeller failed to renew his motion for prejudicial joinder, he has waived all but plain error. State v. DiCarlo, 7th Dist. No. 02 CA 228, 2004-Ohio-5118, at ¶ 6, citing State v. Boyd, 8th Dist. Nos. 82921, 82922, 82923, 2004-Ohio-368, at ¶ 18 (additional citations omitted); State v. Reid, 1st Dist. No. C-050465, 2006-Ohio-6450, at ¶ 16. (Citation omitted.) Plain error exists only where the results of the trial would have been different without the error. See State v.Issa, 93 Ohio St.3d at 56, citing State v. Moreland (1990),50 Ohio St.3d 58, 62.
 {¶ 77} We will conduct a brief review of this issue to determine if the trial court's decision to deny Appenzeller's motion rose to the level of plain error.
 {¶ 78} "[T]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character * * *." Crim. R. 8(A). In this matter, all of the offenses were of the same character, in that all of *Page 19 
the residences broken into were apartments, all of the break-ins occurred during daytime hours, all of the targeted apartments were in the Mentor area, and all of the offenses occurred in February 2005. Thus, joinder of the offenses was appropriate pursuant to Crim. R. 8(A). See, e.g., State v. Conway, 2d Dist. No. 07CA0034, 2008-Ohio-3001, at ¶ 17. In addition, we note joinder of offenses is generally liberally permitted in order to conserve judicial resources, prevent incongruous results by different juries in successive trials, and to lessen inconvenience to witnesses. State v. Torres (1981), 66 Ohio St.2d 340,343.
 {¶ 79} However, pursuant to Crim. R. 14, separate trials may be necessary to prevent prejudice to the defendant. Crim. R. 14 provides, in part:
 {¶ 80} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 81} This court has previously held:
 {¶ 82} "When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced. [Crim. R. 14;State v. Roberts (1980), 62 Ohio St.2d 170, 175.] The accused must provide the trial court with sufficient *Page 20 
information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted. [State v. Lott (1990),51 Ohio St.3d 160, 163.]
 {¶ 83} "The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid. R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct. [State v. Franklin (1992),62 Ohio St.3d 118, 122.] The former is generally referred to as the `other acts test,' while the latter is known as the `joinder test.' [State v.Lott, 51 Ohio St.3d at 163.]" State v. Quinones, 11th Dist. No. 2003-L-015, 2005-Ohio-6576, at ¶ 38-39.
 {¶ 84} Based on the record before this court, we cannot conclude that Appenzeller met his initial burden of demonstrating that his rights would be prejudiced due to the joinder of the offenses. Further, in applying the other acts test and the joinder test, we conclude that Appenzeller was not prejudiced by the joinder of the offenses.
 {¶ 85} In the case sub judice, Wheeler testified regarding Appenzeller's jailhouse confession, wherein Appenzeller described his plan of leaving his belongings with the clerk at the Towne Motel, taking the Laketran bus to the vicinity of the Great Lakes Mall in Mentor, Ohio, targeting residences during the daytime hours, using a screwdriver to enter the residences, and then taking cash or other small items to avoid detection. Appenzeller's individual actions establish a pattern. This court has held that evidence of other acts demonstrating a pattern is admissible pursuant to Evid. R. 404(B). State v. *Page 21 Cochran, 11th Dist. No. 2006-G-2697, 2007-Ohio-345, at ¶ 23. Thus, evidence of the individual offenses would probably be admissible in the trial of the other offenses.
 {¶ 86} Moreover, we note Wheeler's testimony regarding Appenzeller's confession and Middlebrook's corroborating testimony regarding Appenzeller's stay at the Towne Motel would have been admissible in all the trials.
 {¶ 87} Alternatively, under the joinder test, we conclude that Appenzeller was not prejudiced, because the evidence relating to each offense was simple and direct. Each victim briefly testified regarding the items taken from his or her residence. When law enforcement officers testified, they specifically clarified their testimony as to which break-in their investigation pertained.
 {¶ 88} When reviewing this assigned error under the plain error standard of review and based on the record before us, we do not find that Appenzeller has met his burden of demonstrating that the results of the trial would have been different without the perceived error, i.e., the trial court denying his motion for relief from prejudicial joinder.
 {¶ 89} Appenzeller's fifth assignment of error is without merit.
 {¶ 90} Appenzeller's first supplemental assignment of error is:
 {¶ 91} "The trial court violated R.C. 2941.25(A) and Mr. Appenzeller's rights under the Double Jeopardy Clause by imposing multiple convictions and punishment for allied offenses."
 {¶ 92} Ohio's multiple count statute is R.C. 2941.25, which provides: *Page 22 
 {¶ 93} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 94} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 95} The Supreme Court of Ohio has held:
 {¶ 96} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, syllabus.
 {¶ 97} Ohio's burglary statute, R.C. 2911.12, provides, in pertinent part:
 {¶ 98} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 99} "* * *
 {¶ 100} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is *Page 23 
present or likely to be present, with purpose to commit in the habitation any criminal offense;
 {¶ 101} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 102} Appenzeller argues that burglary in violation of R.C. 2911.12(A)(2) and burglary in violation of R.C. 2911.12(A)(3) are allied offenses of similar import. The state, in its supplemental brief, asserts that it "does not dispute that burglary under subsection (A)(2) and burglary under subsection (A)(3) are allied offenses of similar import, and therefore should have merged at sentencing." We agree.
 {¶ 103} "R.C. 2911.12(A)(3) differs from R.C. 2911.12(A)(2) only in that it does not require the structure to be a temporary or permanent habitation, nor does it require a person other than an accomplice to be present or likely to be present." State v. Recker, 3d Dist. Nos. 12-05-21 12-05-22, 2007-Ohio-216, at ¶ 24. Thus, R.C. 2911.12(A)(2) criminalizes the same conduct as R.C. 2911.12(A)(3), except that R.C. 2911.12(A)(2) adds the additional elements that the structure is another's habitation and that another individual (other than an accomplice) is present or likely to be present. Therefore, when an offender commits the offense of burglary in violation of R.C. 2911.12(A)(2), he or she necessarily commits the offense of burglary in violation of R.C. 2911.12(A)(3).
 {¶ 104} Moreover, we note that Appenzeller was charged with a violation of R.C. 2911.12(A)(2) and a violation of R.C. 2911.12(A)(3) for each residence he was accused of burglarizing. However, the evidence in the record shows that Appenzeller entered *Page 24 
each residence with purpose to commit a felony a single time. Therefore, there is no evidence that he had a separate animus when he committed the multiple burglary offenses at a single location. See, e.g., State v.Powers, 8th Dist. No. 86365, 2006-Ohio-2458, at ¶ 13-14. (Citations omitted.)
 {¶ 105} Under these facts, burglary in violation of R.C. 2911.12(A)(2) and burglary in violation of R.C. 2911.12(A)(3) are allied offenses of similar import.
 {¶ 106} In addition, Appenzeller was convicted of four counts of attempted burglary. Two counts were attempted burglary in violation of R.C. 2923.02 and 2911.12(A)(2), and two counts were attempted burglary in violation of R.C. 2923.02 and 2911.12(A)(3). Appenzeller was charged with a violation of R.C. 2923.02/ 2911.12(A)(2) and a violation of R.C. 2923.02/ 2911.12(A)(3) for each of the two residences he was accused of attempting to burglarize. Again, the evidence in the record shows that Appenzeller attempted to enter each residence with purpose to commit a felony a single time. Therefore, for the reasons set forth above, we conclude that attempted burglary in violation of R.C. 2923.02/ 2911.12(A)(2) and attempted burglary in violation of R.C. 2923.02/ 2911.12(A)(3) are allied offenses of similar import.
 {¶ 107} We note that Appenzeller did not object to this error at the trial court level and that the trial court imposed concurrent sentences for each of the offenses that should have been merged. However, both parties cite this court's opinion in State v. Haines, where this court held:
 {¶ 108} "Had he been convicted of only six total offenses, instead of seven, appellant may have been sentenced to shorter individual prison terms and/or a shorter aggregate prison term. The number of convictions may also play a role in future parole *Page 25 
board determinations. As such, `(i)t is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently.' State v. Sullivan, 8th Dist. No. 82816,2003-Ohio-5930, at ¶ 40. See, also, State v. Crowley,151 Ohio App.3d 249, 2002-Ohio-7366, citing State v. Jones, 10th Dist. No. 98-AP-129, 1998 Ohio App. LEXIS 5024. Any error on behalf of a trial court in failing to merge convictions on allied offenses always amounts to plain error. See, also, State v. Ventresca (Mar. 26, 1993), 11th Dist. No. 92-L-091, 1993 Ohio App. LEXIS 1754; Sullivan at ¶ 40." State v.Haines, 11th Dist. No. 2003-L-035, 2005-Ohio-1692, at ¶ 31.
 {¶ 109} Therefore, the trial court committed plain error by failing to merge the multiple counts of burglary and attempted burglary, and Appenzeller was prejudiced by this error.
 {¶ 110} Appenzeller also argues that burglary and theft are allied offenses of similar import.
 {¶ 111} Appenzeller was charged with theft, in violation of R.C. 2913.02, which provides:
 {¶ 112} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 113} "(1) Without the consent of the owner or person authorized to give consent[.]"
 {¶ 114} The Supreme Court of Ohio has held that aggravated burglary and theft are not allied offenses of similar import. State v.Mitchell (1983), 6 Ohio St.3d 416, syllabus. In addition, the Eighth Appellate District has held that burglary and theft are *Page 26 
not allied offenses of similar import. State v. Gonzalez, 8th Dist. No. 87561, 2006-Ohio-6276, at ¶ 28, citing State v. Johnson, 8th Dist. Nos. 81692 81693, 2003-Ohio-3241, at ¶ 90. The Eighth District explained:
 {¶ 115} "These two offenses do have some common elements in that * * * burglary may * * * involve the purpose to commit a theft offense. However, completion of the theft offense is not a necessary element because the purpose to commit any felony will suffice to supply the requisite intent. Therefore burglary and theft are not allied offenses. SeeMitchell, supra.'" State v. Gonzalez, at ¶ 28, quoting State v.Johnson, at ¶ 90.
 {¶ 116} We agree with this analysis. Theft and burglary are not allied offenses of similar import.
 {¶ 117} Appenzeller's first supplemental assignment of error has merit to the extent indicated.
 {¶ 118} Appenzeller's second, third, fourth, and fifth supplemental assignments of error are:
 {¶ 119} "[2.] The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences.
 {¶ 120} "[3.] The trial court violated Mr. Appenzeller's due process rights by imposing non-minimum and consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution.
 {¶ 121} "[4] Trial counsel provided constitutionally ineffective assistance of counsel for failing to object to the imposition of unconstitutional sentences. *Page 27 
 {¶ 122} "[5.] The trial court violated Mr. Appenzeller's due process rights by imposing consecutive sentences without authority."
 {¶ 123} As a result of our analysis of Appenzeller's first supplemental assignment of error, we are remanding this matter to the trial court for the purposes of merging certain offenses and resentencing. Thus, these assigned errors are moot. App. R. 12(A)(1)(c).
 {¶ 124} The judgment of the trial court regarding Appenzeller's convictions on counts one, three, five, six, eight, nine, 11, 13, 15, and 17 is affirmed. The judgment of the trial court regarding Appenzeller's convictions on counts two, four, seven, ten, 12, 14, 16, and 18 is reversed. The trial court's judgment regarding sentencing is reversed. This matter is remanded to the trial court for the trial court to merge the appropriate counts. Thereafter, the trial court shall resentence Appenzeller on the remaining convictions.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY OTOOLE, J., concurs in judgment only.